# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| **ROBERT CLAY JACKSON, III,** | ) | Civil Action No. 7:18CV00593 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| **STEVE CLEAR,** *et al.*, | ) | By: Norman K. Moon |
| Defendants. | ) | Senior United States District Judge |

Robert Clay Jackson, III, a Virginia inmate proceeding *pro se*, filed this civil rights action pursuant to 42 U.S.C. § 1983. In it, he names three defendants: Steve Clear, the Director of the Southwest Virginia Regional Jail Authority, Major Brian Parks, the Superintendent of the Southwest Virginia Jail in Duffield ("Duffield"), and Nurse Scott, who he describes as the "head nurse" at Duffield.[1]

Three motions in the case are pending and ripe for disposition: (1) a motion to dismiss by defendant Scott (Dkt. No. 20); (2) a motion for summary judgment by defendants Clear and Parks (Dkt. No. 23); and (3) Jackson's motion for summary judgment (Dkt. No. 38). For the reasons set forth herein, I will grant Scott's motion to dismiss and the motion for summary judgment by Clear and Parks, and I will deny Jackson's motion for summary judgment.

## I. BACKGROUND

Jackson's claims stem from an alleged assault that occurred, according to his complaint, on September 28, 2018, while he was incarcerated at Duffield. Specifically, in his verified complaint, he alleges that his cooperation with a local drug task force ("DTF") resulted in the arrest and charges against a correctional officer, Burke, and against Matthew Howard, a fellow

---

[1] His complaint also names a "Defendant Jane Doe RN," but he has failed to identify that individual and that defendant has never been served. The claims against Jane Doe will be dismissed without prejudice.

inmate.[2] Thereafter, "on or about September 28, 2018," Howard and two other inmates assaulted Jackson. During the assault, one of the inmates slammed him on the ground, "hyperextending his arm" and resulting in a "broken tendon" in his left arm, bruising to his face, and a lump on his head that lasted for about ten days. (Compl. ¶ 10.)

Jackson claims that, after he complained for several days, the guards finally allowed him to see the medical staff and an unidentified nurse (the "Jane Doe" defendant named in his complaint) simply looked at his arm and told him he was "too old to be fighting." (Compl. 3, Dkt. No. 1.) His complaint appears to imply that she did not provide any other treatment. He was then sent to a segregation cell where he stayed in administrative segregation until his transfer to a jail in Haysi. (*Id.*)

Critically, Jackson's complaint does not identify any action or inaction by any of the named defendants giving rise to liability. Nonetheless, he claims that Clear and Parks acted with deliberate indifference toward him. (*Id.*, ¶ 15.) He claims that they knew:

> the events that took place resulting failing to [protect and] the
> Plaintiff being Assaulted after the events that took place resulting
> in unsafe conditions for the Plaintiff wich violated plaintiffs rights
> and constituted Cruel and Unusual punishment under the Eighth
> Amendment of the United States Constitution. [sic].

(*Id.*, ¶ 15.) As to Nurse Scott, he contends that she was deliberately indifferent to his serious medical need. (*Id.*, ¶ 16.)

## II. DISCUSSION

### A. Scott's Motion to Dismiss

In her motion to dismiss, Scott argues that the claims against her should be dismissed for

---

[2] According to Parks's affidavit, the correctional officer eventually was charged with smuggling drugs into the jail that that he received from Howard's girlfriend. (Parks Aff. ¶ 3, Dkt. No. 24-1.) Parks's affidavit does not mention any charges against Howard or the girlfriend.

three independent reasons. Specifically, she contends that Jackson's complaint (1) fails to allege any actions by Nurse Scott, and fails to allege facts stating a claim for supervisory liability against Nurse Scott; (2) fails to allege a sufficiently serious injury; and (3) admits that Plaintiff failed to exhaust his administrative remedies. (Mem. Supp. Mot. Dismiss 1, Dkt. No. 21.) I find the first of these requires dismissal of the claims against Nurse Scott, and so I decline to address the other two as to the motion to dismiss. *Cf.* 42 U.S.C. § 1997e(c)(2) (permitting a court to dismiss a prisoner complaint challenging prisoner conditions for failure to state a claim, even if a prisoner has not exhausted administrative remedies).

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–63 (2007); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the nonmoving party." *Massey v. Ojaniit*, 759 F.3d 343, 347 (4th Cir. 2014). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano*, 521 F.3d at 302. *Pro se* complaints are afforded a liberal construction. *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006).

**1. Eighth Amendment—Deliberate Indifference to Medical Need**

"It is beyond debate that a prison official's deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment." *Gordon v. Schilling*, 937 F.3d 348, 356 (4th Cir. 2019). To demonstrate deliberate indifference, an inmate must show that (1) he has a medical condition that has been "diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity

3

for a doctor's attention" and (2) the defendant "had actual knowledge of the plaintiff's serious medical needs and the related risks, but nevertheless disregarded them." *Id.* at 356–57; *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). The first component is an objective inquiry and the second is subjective. *Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209–10 (4th Cir. 2017).

As I noted in describing Jackson's claims, his complaint does not contain any facts to suggest that Nurse Scott had "actual knowledge" of his medical needs, nor does he identify any action or inaction by Nurse Scott that shows she actually disregarded any medical need. Accordingly, he has failed to state an Eighth Amendment claim against her arising from these incidents.

### 2. Supervisory Liability

By his reference to Scott as the "Head Nurse," it is possible that Jackson may be attempting to hold her liable under a theory of supervisor liability. "[S]upervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates." *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984) (citation omitted). "Liability in this context is not premised on respondeat superior, but on a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." *Id.*

"In order to succeed on a § 1983 claim for supervisory liability, a plaintiff must show: (1) that the supervisor had actual or constructive knowledge that [a] subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,'; and (3) that there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th

4

Cir. 2014) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)).

"As to the first element, '[e]stablishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury.'" *Id.* (alteration in original). "As to the second element, a plaintiff 'may establish deliberate indifference by demonstrating a supervisor's continued inaction in the face of documented widespread abuses." *Id.* "'Ordinarily, a plaintiff cannot satisfy his burden of proof by pointing to a single incident or isolated incidents,' for a supervisor cannot be expected to promulgate rules and procedures covering every conceivable occurrence within the area of his responsibilities." *Slakan*, 737 F.3d at 372 (quoting *Orpiano*, 632 F.2d at 1101). "Finally, as to the third element, 'proof of causation may be direct . . . where the policy commands the injury of which the plaintiff complains . . . or may be supplied by the tort principle that holds a person liable for the natural consequences of his actions.'" *Id.* at 226–27. The causation requirement in a supervisory liability case "is a stringent one," requiring proof that the challenged action was "'the moving force' behind the ultimate violation." *Jones v. Wellham*, 104 F.3d 620, 627 (4th Cir. 1997) (quoting *Polk County v. Dodson*, 454 U.S. 312, 326 (1981)).

Jackson has wholly failed to allege facts that would plausibly support any of these three elements. He has failed to allege any involvement by Scott in his medical treatment or generally; he has failed to allege a pervasive and widespread practice of deliberate indifference that in turn posed a pervasive and unreasonable risk of harm; and he has failed to allege any causal connection between any such practice and his alleged harm. Accordingly, I conclude that Jackson has failed to establish that Scott was personally and sufficiently involved in any alleged constitutional violation, and, thus, I will grant Scott's motion to dismiss.

5

## B. Clear and Parks's Motion for Summary Judgment

In their motion for summary judgment, Clear and Parks seek summary judgment on several different grounds. First, they correctly note that Jackson has failed to allege any personal involvement by either of them in the events alleged in the complaint. Moreover, they present sworn evidence showing that there is "no record of any altercation ever happening either as Jackson describes or happening at all." (Mem. Supp. Mot. Summ. J. 1, Dkt. No. 24.) Lastly, they contend that he failed to exhaust his administrative remedies as to the assault or the medical treatment afterward, and so his suit is barred under the Prison Litigation Reform Act.[3]

Under Rule 56, summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists only where the record, taken as a whole, could lead a reasonable jury to return a verdict in favor of the nonmoving party. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009). In making that determination, I must take "the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party," *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc).

A party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."

---

[3] In his complaint, Jackson admits that he did not file any grievance or otherwise attempt to exhaust his administrative remedies. But he states that he "was not permitted to file a complaint or grievance" after the incident because he was held in the special housing unit. He cites to no evidence or policy so stating and Parks's testimony is that a prisoner who is unable to use a kiosk for filing a grievance may submit a paper grievance form. Jackson does not state that he ever requested a grievance form while in the special housing unit. Jackson also states that, once he was transferred to Haysi the following week, he was not permitted to file a grievance for acts that arose at Duffield. I note, though, that he was housed at Duffield until October 4, 2018, and thus had at least six days to file a grievance (if the fight occurred on September 28, as his complaint alleges) or four days to file a grievance (if the fight occurred on September 30, as he states in his later-filed affidavit).

Nonetheless, I conclude that his allegations arguably raise a question about whether the grievance procedure was available to him. *See* 42 U.S.C. § 1997e(a) (stating that an inmate need only exhaust "available" remedies); *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (explaining that an administrative remedy is not available "if a prisoner, through no fault of his own, was prevented from availing himself of it"). So, although defendants' motions seek dismissal based on Jackson's failure to exhaust, my decision does not rest on that ground.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Moreover, "[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247–48. Instead, the non-moving party must produce "significantly probative" evidence from which a reasonable jury could return a verdict in his favor. *Abcor Corp. v. AM Int'l, Inc.*, 916 F.2d 924, 930 (4th Cir. 1990) (quoting *Anderson*, 477 U.S. at 249–50).

**1. Eighth Amendment—Deliberate Indifference to Medical Need**

It is unclear whether Jackson is seeking to hold Parks and Clear liable for a failure to provide medical treatment, for a failure to protect, or for both. To the extent he is attempting to assert a claim for failure to provide medical treatment, his claims fail for the same reasons that his claims against Scott failed: he has not identified any action or inaction by them related to his medical treatment, nor has he pled any facts that plausibly allege a claim of supervisory liability against either.

**2. Eighth Amendment—Unsafe Conditions Based on a Failure to Protect**

As to Jackson's claim asserting that defendants failed to protect him from an assault, that claim also falls within the Eighth Amendment. To prove a Section 1983 claim against officials for failing to protect him from injury, the prisoner plaintiff must establish: (1) he was "incarcerated under conditions posing a substantial risk of serious harm" and (2) the defendant prison official had a "sufficiently culpable state of mind," one of "deliberate indifference." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Deliberate indifference is "somewhere between negligence and purpose or knowledge: namely, recklessness of the subjective type used in criminal law." *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995). Further, in order to succeed on a failure-to-protect claim, a plaintiff must show that the harm suffered was objectively serious, *i.e.*, he must show he suffered a "serious or significant physical or emotional

7

injury." *Danser v. Stansberry*, 772 F.3d 340, 346 (4th Cir. 2014).

An inmate may prove deliberate indifference through direct or circumstantial evidence, and "[d]irect evidence of actual knowledge is not required." *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015). The plaintiff may satisfy the deliberate indifference element with evidence that the challenged circumstances created a "substantial risk" of harm that "was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it." *Id.* Even without direct evidence, "an injury might be so obvious that the factfinder could conclude that the [official] did know of it because he could not have failed to know of it." *Id.*

In support of the summary judgment motion, Parks has submitted an affidavit that contains relevant testimony as to any failure-to-protect claim. In it, Parks explains that, on some unknown date,[4] Jackson provided information "to SWVRJA staff" implicating a corrections officer as smuggling drugs into the facility. (Parks Aff. ¶¶ 3–4, Dkt. No. 24-1.) SWVRJA provided the information to the DTF, which began in investigation. Parks avers that, on September 30, 2018, the DTF "informed SWVRJA that it intended to arrest the correctional officer identified by Jackson." (Parks Aff. ¶ 10, Dkt. No. 24-1.) At approximately 9:30 p.m. on that date, Parks was notified that the arrest of the officer had occurred. Two hours later, at 11:33 p.m., and after Jackson placed a phone call to an outside DTF officer, he was moved to the special housing unit at Duffield.[5] At no point did Jackson ever make a request to be kept

---

[4] In his own motion for summary judgment, Jackson argues that the defendants knew of the extreme danger to him because they had interactions with the DTF "weeks before the day of the incident." This is not sworn testimony and I do not consider it.

[5] Both Jackson and Howard were housed in the 5A housing unit on that date. (Parks Aff. ¶ 7.)

8

separate from Howard. (Parks Aff. ¶¶ 9–13.) Nor does Jackson allege that, at any point before the alleged attack, he was threatened by Howard, any other inmate, or any correctional officer; that he reported any such threats; or that he otherwise made any attempt to let any jail official know that he felt threatened by Howard or by anyone else.

Parks further avers that there are no incident reports indicating that Jackson was involved in any fight, assault, or other altercation between September 28, 2018 and September 30, 2018, and there would have been a report had a fight, assault, or altercation had occurred. There also was no disciplinary charge resulting from such an incident, which there would have been had one occurred. There also are no references in any shift logs on those dates regarding any fight, assault, or other altercation, which there would have been had one occurred. There also are no emergency grievances, sick call requests, or other medical requests from Jackson on or after September 28, 2018 referencing the injuries Jackson alleges in his Complaint or referencing any fight, assault, or other altercation involving Jackson. (Parks Aff. ¶¶ 14–21.)

Critically, moreover, Parks also avers that there are no medical records reflecting any injuries consistent with the allegations in Jackson's complaint or reflecting Jackson seeking treatment for such injuries. Indeed, the morning of September 30 (which is after the attack using the date in the verified complaint or the morning of the attack using the date in Jackson's later-filed affidavit), Jackson submitted a medical slip complaining of constipation, but made no reference to any other injuries. Even when he was seen in the medical unit on October 2, 2018, which was after the alleged incident regardless of which date it occurred, there is no mention of *any* of the injuries he now states he had. Nor is there any reference to him complaining of such injuries. Instead, he was seen for his complaint of constipation and the medical records reflect that he was "alert and oriented" with "no acute distress." (Dkt. No. 24-1, at 11.)

In response to Parks's affidavit, Jackson has submitted a sworn response and "counter-

9

affidavit" in which, as already noted, he changes the date of the alleged attack from September 28 (as stated in his complaint) to the evening of September 30. His affidavit does not otherwise add much to the allegations in his complaint. In it, he states that the jail "failed to follow proper procedures when dealing with an incident of this magnitude and had over a week notice of what actions were going to take place [and] failed to act accordingly."[6] (Jackson Aff, at 1, Dkt. No. 35.) He claims that the supervisors "were aware of the unreasonable risk" to him, although he offers no facts to explain how he knows what Parks or Clear allegedly knew or when. (*See id.*) As already noted, moreover, nowhere does Jackson allege that he ever reported to anyone at SWVRJA that he believed he was in danger, that he had been threatened, or that he had otherwise notified anyone of a possible threat from Howard or anyone.

Jackson's failure-to-protect claim against Clear and Parks fails for several reasons. First of all, he does not allege that either Clear or Parks *personally* had any knowledge that should have led them to believe that he would be attacked by Howard or others. As to Clear, there is no evidence of *any* knowledge that Jackson was even cooperating with the drug task force, let alone any allegation of any action or inaction on his part so as to hold him liable. There is simply nothing in the record to support that Clear had any knowledge that should have led him to believe that Jackson was at any sort of risk. Accordingly, the direct liability and any supervisory liability claims against Clear fail.

As to Parks, Parks himself has admitted that he knew of the impending arrest of the officer at least as of 9:30 p.m. on September 30, and that Jackson was not moved to protective custody for two hours afterward. His affidavit also states that the "SWVRJA" knew of Jackson's

---

[6] Jackson states that not transferring him to protective custody prior to the correctional officer's arrest was a violation of "jail policy," but he does not refer to any specific policy or even state what "the policy" that he is relying upon says.

10

cooperation prior to that time, although it is not clear that Parks himself had knowledge of the cooperation.

There is no evidence about why the decision was made to place Jackson in the special housing unit, or why it was made at the particular time it was. But Jackson must show that Parks knew of a substantial risk to him and was deliberately indifferent to it, and he has not presented evidence from which a jury could so find.

Notably, Jackson was moved within two hours after Parks learning that the arrest of the correctional officer had occurred, which does not reflect deliberate indifference. Indeed, Parks's affidavit suggests that the the decision to move Jackson was tied to notice of the arrest, and Jackson was moved within two hours of that event. Before that arrest occurred, there would be no reason to think that other people would find out that Jackson had cooperated, and Jackson has not even alleged that any other prisoners were aware of an ongoing investigation. Indeed, Jackson does not allege that any of the inmates—or other correctional officers, for that matter— knew of his cooperation prior to the officer's arrest. So, prior to the arrest at least, it is unclear how Jackson was at risk of injury from any inmate. And if a fight in fact occurred in the intervening two hours, it is not at all clear that would constitute deliberate indifference on the part of Parks. Instead, it appears that Parks (or other officials) acted with some haste in moving Jackson. Where an official takes reasonable steps to alleviate the risk of harm, even if they are unsuccessful or come too late, he has not been deliberately indifferent. *See Brown v. Harris*, 240 F.3d 383, 390 (4th Cir. 2001) (explaining that an official "avoids liability if he responded reasonably to the risk of which he knew") (citing *Farmer*, 511 U.S. at 844).

Even assuming that Parks exhibited deliberate indifference by failing to transfer Jackson to protective custody sooner, though, Jackson has not presented evidence of any "significant physical or emotional injury" as required to state an Eighth Amendment claim. In the context of

a failure-to-protect claim, a prisoner must establish that he suffered a "serious or significant physical or emotional injury." *Danser*, 772 F.3d at 346. Jackson, however, presents no evidence in response to the summary judgment motion to contradict the medical records from two days after the alleged incident, in which he made *no* complaints about any of the injuries he is now claiming he sustained. For example, his complaint states that the pain lasted for about a week and a half, but he has presented no evidence to show that he ever complained to any medical provider about the pain or other injuries, before or after being transferred. He has presented no medical evidence corroborating that he ever suffered any injury, let alone a significant one, or that he ever complained to anyone of any injury, significant or otherwise. This case is a far stretch, then, from *Raynor v. Pugh*, 817 F.3d 123 (4th Cir. 2016), where the Fourth Circuit reversed the district court's grant of summary judgment in an official's favor. The district court's decision was based, in part, on its conclusion that the prisoner had not presented sufficient evidence of a significant injury. In reversing, the Fourth Circuit noted that, in addition to the plaintiff's testimony, describing the assault and his injuries in detail, he presented several written requests to the prison for medical attention, complaining of severe back pain and numbness, six medical reports interpreting x-rays of his spine before and after the assault, and the affidavit of another inmate who observed the attack and described in detail the impact that allegedly caused plaintiff's spinal injury. 817 F.3d at 128–29. Here, by contrast, we have the bald statement of plaintiff, unsupported—and indeed, contradicted—by medical records showing he made no contemporaneous or subsequent report of injuries.

Likewise, Jackson does not dispute that there are no records of any such fight, assault, or altercation. Nor does he aver that he ever filed any grievance or any other written documentation, including a request for medical services, concerning the fight or his injuries. And he makes no attempt to offer any alternative explanation for the absence of all such

12

records.⁷  Even considering his verified complaint as responding to the motion for summary judgment,⁸ his bare assertion that he was a fight and was injured must be balanced against the complete absence of any indication in any of Duffield's records that a fight occurred or that Jackson was injured.

As noted, I find particularly significant that, when he was seen for his constipation complaint, two days after being placed in protective custody (which also would have been at least two days after the alleged assault), the medical records reflect that he made no mention of any injuries to his arm or head.

In the face of the overwhelming evidence that this attack did not occur—and certainly did not result in any "significant injury" to Jackson as he claims—I conclude that summary judgment for defendants is proper.  As the Supreme Court has noted, the ultimate inquiry on summary judgment is whether there is "sufficient evidence favoring the nomoving party for a jury to return a verdict for that party.  If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249–50 (internal citations omitted).  Indeed, a trial judge has an "affirmative obligation" to "prevent 'factually unsupported claims and defenses' from proceeding to trial." *Id.* (quoting *Celotex*, 477 U.S. at 317).  Here, Jackson's claims against Parks and Clear fail for lack of personal involvement, lack of evidence showing deliberate indifference, and a lack of sufficient evidence for a reasonable jury to conclude that Jackson suffered a significant or serious injury.  For all of

---

⁷ Any such explanation, moreover, would likely be fanciful.  It would require either: (1) a complete failure by multiple officers at Duffield to notice or learn of an altercation or attack between prisoners that resulted in serious injuries, coupled with a failure by any inmates who observed it to report it; or (2) that multiple officers engaged in some type of concerted effort to refuse to make such records or to destroy them.

⁸ To the extent they are based on personal knowledge, statements in a *pro se* plaintiff's verified amended complaint, can be evidence in opposition to the summary judgment motion. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991).

these reasons, I will grant Clear and Parks's motion for summary judgment.

### C. Jackson's Motion for Summary Judgment

In light of the above rulings, I will deny Jackson's motion for summary judgment, in which I must construe all evidence in defendants' favor. As already noted, even construing the record evidence in Jackson's favor, Clear and Parks are entitled to judgment in their favor.

### III. CONCLUSION

For the foregoing reasons, I will grant Scott's motion to dismiss, grant Parks and Clear's motion for summary judgment, deny Jackson's motion for summary judgment, and dismiss the claims against "Nurse Jane Doe" without prejudice. An appropriate order will be entered.

**ENTER**: This 23rd day of March, 2020.

_____
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE